Let me call the case. This is 19-4036, Oshian v. Barr. Let me just give the advocates a review of what the process will be. Under our en banc protocol, the petitioner appellant, Mr. Kruckenberg, will be able to go first. He'll get up to three minutes of uninterrupted time to begin his presentation. At that point, I will, at an appropriate point, I will interrupt your monologue opportunity, and then we will go through a series of questions. And I've instructed my court that the process for questioning will be that we will start with me as chief judge asking the first series of questions. And I've been allotted two to three minutes for my questioning period, although I can always cede or postpone my questions for towards the end. After I'm done with my initial round of questioning, I will defer to Judge Briscoe, who was the author of the panel opinion below, and she'll have an opportunity for two to three minutes of questioning after that. We will then go in order of seniority around the table, starting with our next most senior judge, who's Judge Lucero, this afternoon, and he'll get two to three minutes, and then we'll proceed through our seniority rank until we're done. At that point, if there's time remaining, I'll open it up for additional questions by the court. And because of the kind of nature of a modified procedure, Mr. Kruckenberg, I will give you some rebuttal time, because I think it's likely that we'll, you know, I'm sure you want some, and it's likely that we're going to take your entire 30 minutes unless, you know, unless not. But we'll see how that goes, but you don't have to worry about saving rebuttal time for this particular argument. And then after that, we'll turn it over to Mr. Hinshelwood for the government, three minutes, and then the same process on questioning. If that's clear, let's get started. Mr. Kruckenberg, you're for Mr. Posian, you may proceed. Thank you, Your Honor. Good afternoon, and may it please the court. Caleb Kruckenberg from the New Civil Liberties Alliance, or Clark Posian. The only way to uphold the bump stock rule is to rely on the gravitational pull of Chevron deference. That's because Congress did not clearly include bump stocks, which are plastic accessories that do not alter the trigger mechanism of a semi-automatic firearm in a specific and limited definition of a machine gun. But Chevron deference cannot apply here for five independent reasons. First, ATF agrees that it has no statutory authority to issue a substantive rule clarifying any purported ambiguity in the statute. But that concession should decide this case. As the rule is substantive, it is an invalid agency action. If, on the other hand, ATF is right that the rule is merely interpretive, then Chevron cannot apply. Second, there's no statutory gap for the agency to fill. ATF agrees, and numerous courts of appeals have held, that the statutory definition of a machine gun is not ambiguous. Without ambiguity, there's no basis for Chevron deference. Third, Chevron's fundamental prerequisite for deference is absence. ATF's exercise of delicated gap-filling authority. Chevron allows an agency to seek deference to its position, but it does not command a court to impose deference against the agency's will. Fourth, the rule of lenity, a rule of constitutional necessity, must take precedence over Chevron deference, a rule of regulatory convenience. And finally, ATF did not exercise its expertise in crafting the rule. It rejected it. Before this rule was issued, ATF publicly stated at least 27 times, either in classification rulings or formal letters, that both stock devices are not machine guns. ATF's sudden change of heart came at the insistence of DOJ, not ATF's firearms examiners. Thus, yet another fundamental prerequisite for deference is absence. And, Your Honor, I am now ready to take this down with questions. Thank you, counsel. Let's start with lenity. What's your best argument that lenity should apply here, and why doesn't Babbitt v. Sweet Home cause you problems in making whatever your argument is? Well, Your Honor, the rule of lenity, as we pointed out in our briefing, is a longstanding rule of interpretation, and it predates Chevron deference significantly. And it says that if there is an ambiguity in a criminal statute, then the court must read it in the most, in the way that reduces liability the most. And the Babbitt footnote, as this court previously recognized, is not binding. It does not foreclose the rule of lenity. Babbitt said that they need not apply the rule of lenity in that particular case, not that a court may not apply the rule of lenity. And in addition, the Babbitt footnote recognized that the rule of lenity should apply to a regulatory challenge, at least to an as-applied challenge, and the court cited to the Thompson Center Arms case for that proposition. However, the footnote continued, and it said that it would not apply Chevron deference in a facial challenge. And that proceeded from Justice Stevens' view that you should read the regulation in different terms, based on whether it's a facial challenge or an as-applied challenge. And we know from Layocow v. Ashcroft, that's no longer the appropriate analysis. The Supreme Court has been very clear. When we have a regulation that has criminal consequences, even in a facial challenge, we apply the rule of lenity. And so, if you take the position that Chevron's a canon of construction, you know, why should an agency be able to waive a canon of construction, and certainly why should that canon of construction yield to the lenity canon of construction? Well, part of the problem, I think, when we think about how Chevron deference applies, when we try to use terms like canons of construction or standard of review, we run into problems because that's not necessarily the terminology or the thought process that the Supreme Court is using. Chevron deference is a unique rule, and as we argued in our briefing, it arises when certain prerequisites are present, and it doesn't when other prerequisites are not present. And the basic premise of Chevron is that Congress has delegated to the agency gap-filling authority and the authority to make interpretive decisions. But if the agency says we're not invoking that delegation, there's no basis to use Chevron deference. And to answer your second question, considering why lenity should take precedence, if we look at the case, the DeBartolo case from the Supreme Court, that shows a model of how we can apply the rule of lenity instead of deference. In that case, the Supreme Court said Chevron deference would normally apply to a rule that the court was considering, but it said because of the rule of constitutional avoidance, we will not grant deference, and we will instead avoid the constitutional problem. But the rule of lenity and the rule of constitutional avoidance are very closely related, and they serve similar functions. And that's how we know that the rule of lenity should take precedence. Okay, thank you, counsel. I think my three minutes are up, so let me turn it over to my colleague, Judge Briscoe. Unmute. Thank you. Thank you, counsel. I'm glad to see us all together again. I was curious about your views about ATF expertise. Are you contending that the ATF has no expertise in defining and regulating various classes of firearms? No, that's not my contention at all, Your Honor. Our contention here is that the ATF does have expertise, but the expertise pointed against this regulation. The agency expertise for years was based on direct examination of bump stocks, and the examiner said consistently, these are not machine guns. That's what the expertise suggested. This rule, instead, was a repudiation of that expertise. So once they make a decision, they're stuck with it? It can never be adjusted, no matter what the mechanisms are that are presented to the ATF for review? Not at all. And this would be a very different story if... Not at all what? That they can't alter their view? That's right. The agency can alter its view. It certainly can. But this would be a very different question if the firearms examiners had reexamined bump stocks and come to a different conclusion. That would be sort of a conflict in the agency's expertise. Well, weren't they reexamining this precise bump stock? No, Your Honor. And there is no indication in the administrative record. And instead, what we have is the testimony from the acting director for the Senate Judiciary Committee. Are we bound by the ATF's counsel in determining whether or not it is within the scope of ATF's rulemaking authority? No, You're not, Your Honor. And that is a determination that this court has to make. But it is worth noting, and I think it is an important point, that ATF has said it does not have substantive rulemaking authority. Do you look at something either in the National Firearms Act or the Gun Control Act to rely on to determine that there is no authority? Well, Your Honor, the only sources of authority that the rule invoked were 18 U.S.C. 926a and also a corresponding part of Title 26, Section 7801. Those are the two statutes that were invoked in the rule. And the ATF has now said in its briefing, repeatedly, neither of those statutes grants the agency substantive rulemaking authority. Instead, what they've said is this grants the agency, quote, administration and enforcement authority. I'll move on to lenity. The cases you cite are all criminal cases. What authority do we have to apply it to APA cases? That is Leocal v. Ashcroft. And the court was very clear that in any... And that was an APA case? That was not an APA case, Your Honor. That was... That was a straight-up criminal case, wasn't it? Yes, Your Honor. Well, no, it was not, because it was an immigration case. And what the court said... But they're looking at the definition of criminal statute. Yes, Your Honor. I guess the point that I'm trying to make with Leocal is the court was very clear that if a civil regulation or an administrative rule has criminal consequences, whether that's an immigration proceedings or, in this case, actual direct criminal consequences, then you do apply the rule of lenity. Okay, counsel. I'll go on. Yeah, I think your time's expired. Let's turn it to Judge Acero. Yes. Good afternoon, counsel. I thought we had a case of substantial national importance before us. But as I studied this case, I have continued to have serious reservations about the jurisdiction of our en banc court. And that is because we do not have a final judgment before us. We have nothing more than the appeal of the denial of a preliminary injunction. And this appeal is interlocutory in nature. And I have questions about the bump stock. So let me proceed in that order. Number one, do we have a final judgment before us? No, you do not, Your Honor. Is this an appeal, interlocutory appeal of the denial of a preliminary injunction? Yes, Your Honor. And number three, what is the status of the bump stock weapon in this case? Has it been relinquished as required? Yes, it has. It has been surrendered to the ATF. Thank you, counsel. Why isn't this case nothing more than the request for an advisory opinion to the trial court below, creating basically the law of the case when the case hasn't even been heard? Well, Your Honor, this is an appeal, this is an interlocutory appeal, as you said, of a denial of a preliminary injunction. And the standard, of course, is whether you were likely to prevail below. So what are we going to do, issue an opinion here that the law is likely to be X? Yes, Your Honor. And that is what the panel decided, and that is what this court has decided to read here, is, in part, the likelihood of success prong of the denial of the preliminary injunction. Right. Well, we've been arguing now for 10 minutes. I haven't even heard the word preliminary injunction invoked, not once. And that is my concern. That you are arguing this case as if it were a case on the merits, finally resolved, ready to be appealed. None of that is the case. You have not asked for monetary relief in case the ‑‑ in lieu of the gun, correct? That is correct. Wow. So what remains for us to resolve? Well, Your Honor, no matter what this court rules, this case will go back down to the district court. And then the district court will have to decide the merits issue. However, as the panel recognized and how ‑‑ as I'm sure the district court fully understands, how the panel rules on the likelihood of success seriously informs what happens. But that opinion, counsel, is going to be advisory in nature. We don't have jurisdiction to issue advisory opinions. We have very limited jurisdiction when we entertain an appeal of the denial of a preliminary injunction. We don't jump to the merits. We don't resolve substantial issues of law. We merely apply the standard of review and we ask the very questions that were asked below. Are you likely to prevail, et cetera? And it seems to be that your whole issue now has become totally academic. You don't even get the bump stock back. It's already been relinquished. I'm repeating myself and I can't do so further. That's three minutes. It's unnecessary to do so, but you've got to persuade me that we should hear this case at all. All right. Yes, Your Honor. Excuse me. Briefly, counsel. I just wanted to clarify one factual issue. Mr. Poshen has relinquished the bump stock. However, the ATF has agreed not to destroy the device pending the outcome of this litigation. Thank you. Judge Hartz? I just have one question. One of the interpretive issues here is the meaning of single function of the trigger, which the regulation interprets as single pull of the trigger. At what point was that not just an academic exercise? When do we start having devices for which the difference between single function of the trigger, meaning the mechanism, at what point do we have devices for which the single function of the trigger was not a single pull of the trigger? Well, Your Honor, this actually does come up in different contexts. And some of the cases that we've cited include an easy example is a minigun. This is a machine gun that operates when you actually press a button. You press a switch and it fires automatically. And that was a challenge. That was a case in the Seventh Circuit where the defendant in a criminal case said, that is not a single function of the trigger. It should be a pull of the trigger. And the Seventh Circuit dispatched that argument very quickly. They said, no, that's a function. That's why the statute makes that distinction. It doesn't talk about just a little lever on a gun. It talks about how the firing mechanism is triggered. And our argument and what makes a bump stock not a machine gun is for every bullet that is fired, the trigger mechanism has to be reset. Actually, a shooter has to bump a trigger. And when was that type of technology developed? When was the first time there was a device or an accessory that allowed multiple functions of the trigger with just one pull of the operative mechanism? Well, a bump stock was first developed in 2003 or so. That's when we first started seeing recognition by the ATF. There's been no legislation since then. Is that correct? That's correct. So when the language single function of the trigger was developed, it wouldn't have made any difference if it said single pull of the trigger. Well, that's not entirely true. Because if we look back to when that terminology was added to the statute, there were certainly other types of weapons. There were many guns, for example. There were gatling guns. There were a variety of different firearms and different machine guns that operated not necessarily just by pulling a trigger, pulling the lever at the bottom of the firearm. That's all I have. Thank you. Judge Holmes? Yes. Counsel, let me just follow up briefly just for clarity for myself on Judge Lucero's jurisdictional inquiry. I think what I understood the gist of that to be is what is the import of the surrender of the bump stock on the question of whether that appeal to pursue the action. So I just want to get clear. I think the answer that I'm looking to understand is what's the nature of the harm that the complaint alleges, and does that harm continue on even with the surrender of the bump stock? Yes, Your Honor. And the harm we've alleged is that my client was forced to surrender his unique property that he obtained legally, the bump stock, to the government on pains of prosecution, criminal prosecution. And it is our position that the bump stock rule is unlawful and it's unconstitutional, and that is a concrete injury that he suffered. And I'll also just say for scanning purposes, the government has taken the position in this litigation that actually bump stocks have always been prohibited items. They've always been machine guns. If that's true, then my client faces potential criminal liability because he has been very open about the fact that he possessed the bump stock, he surrendered it to the ATF, and that's well within the statute of limitations. But I thought the government gave amnesty for people if they surrendered the bump stock prior to before the deadline. Is that not right? Well, that is what was said in the rule. But the rule also said that it would take effect in the future. The rule classified itself as a substantive rule. And what I'm saying is that in the litigation, the government has taken the position that actually bump stocks have always been unlawful items. But obviously, we don't have to get there to find standing. It's sufficient that my client was forced to surrender this device that he lawfully acquired. But I think that the question is, in the complaint you allege, would I take it in part to be a harm derived from a structural constitutional argument, right? That there is a separation of powers argument here that is resulting in an ongoing harm. Do I understand that correctly? That is correct. That is part of the harm that we've alleged. Okay. All right. Let me just quickly ask this. Is there a distinction between an allegation that the regulatory definitions of single function of a trigger and automatic are unreasonable or wrong? Let's just say wrong. They're wrong. A distinction between that and saying that the ATF's application of its own regulatory definitions are wrong. Do you acknowledge that distinction? Yes, Your Honor. Those are distinct inquiries. Well, I'm just trying to get clear of the scope. Are you saying that their regulatory definitions are themselves wrong or their application of those definitions to a bump stock are wrong? No. Our argument is that the rule itself, the full rule is invalid. And we are lodging a facial challenge only. And certainly there might be other circumstances where a device doesn't necessarily clearly fall into the rule and the individual's decision about whether to prosecute that would be a discretionary decision that would give rise to an as-applied challenge. But we are lodging a facial challenge. And just for clarity's sake, the device that my client surrendered is referenced in the rule. There is no question that this was the target of the ATF rule. All right. Thank you, Judge Holmes. Judge Matheson? Thank you. Counsel, just maybe one last time on this theme that was developed. If your client complied in spring of 2019 with the rule, what real-world effect would the preliminary injunction have? The preliminary injunction would return his property to him, his property that he purchased lawfully. And that is the harm or that is the deprivation that the government agreed below was an irreparable harm. Because this is a unique device that would be destroyed if the rule was allowed to take effect. Counsel, I thought the harm you were arguing for the preliminary injunction was the separation of powers harm, not a property deprivation harm. That is correct. Well, if that's correct, then I guess I have to go back to my question. What is the preliminary injunction going to do for you at this point? Well, the preliminary injunction, in our view, first, it does return the property. And I just want to make a distinction. We argued the constitutional harm. The government conceded the deprivation of property as its own unique irreparable harm. And so our position is that he's deprived of two things. I mean, it's his unique property, but it's also his constitutional right. He's laboring under an unlawful agency action. And practically what would happen is he would be returned his property, but he also would not have to comply with a criminal law that has no lawful basis. Let me just go to one of the Chevron issues. When ATF promulgated the rule, didn't it say that the statute may be ambiguous? That was certainly an assertion in the rule or in the rules test, yeah, or being noted. Well, if that's the case, how can Chevron be waived when, for example, under Chenery, we have to address the agency's rationale for the rule? Well, Your Honor, it's a very different story whether the agency previously took the position that the statute is ambiguous. And now they are not arguing that. And with saying that the agency is forever bound to invoke Chevron deference because the agency has been very clear that they are not invoking Chevron. Well, let's be clear. You're talking about arguments of counsel in the context of this appeal, correct? Yes, Your Honor. But don't we have to deal with what happened at the agency? Not with what counsel may have argued in their briefs at this point, but why wouldn't we have to take what the agency said it was doing, why it was doing it, and evaluate it on that basis? Because the arguments of counsel, the formal positions of counsel for the Department of Justice, that is the position of the agency. There's no special rule for an agency that it cannot be bound by its own attorneys. And that's particularly true when we think about this rule was issued by the United States Department of Justice, which is, it was signed by the Attorney General, which is the litigating force here. Counsel, I know I'm going to run out of time, but one follow-up. Your time's expired, but go ahead. All right. No, that's fine. I'll hold off. All right. Thank you, Judge Bacharach. Counsel, I want to follow up on a somewhat related issue that Judge Matheson is raising. Even if the government has not preserved an argument about the applicability of Chevron deference, typically we can affirm on alternative grounds, particularly when two or three of the factors in Elkins v. Comfort or Brown v. Perez are satisfied. The record's adequately developed. It's an issue of law. Aren't those circumstances present here? And if so, can't we affirm on alternative grounds even if the government has failed to preserve or even waived Chevron deference? This court certainly could. And it's our position that Chevron deference is inappropriate. And one of the reasons that it's inappropriate is because the government has refused to invoke it. They have declined to invoke it. But it's our position that without applying Chevron deference, this becomes a very easy question for this court to decide. It's whether, not whether the rule was reasonable, it's whether the rule is the best meaning of the statute that Congress wrote. And the best evidence of what the statute means, I think, is the agency's position for years that bump stocks are not machine guns. That is a plain language interpretation of the statute. And that's what we're advocating this court. Take into account. Okay. Thank you. With regard to the applicability of or the significance of the government's position, sometimes, and I'll give you an example, sometimes quasi-judicial administrative bodies, BIA would be one. A better example would be Occupational Safety and Health Review Commission may issue a binding precedential decision that would typically be accorded Chevron deference. Now, OSHRS is not part of the Department of Labor. And so if the Secretary of Labor litigates and says we don't want Chevron deference according to the OSHRC's quasi-judicial decision, which it might have a self-interest in doing if the decision was adverse to the Department of Labor, why should we consider Chevron deference waived or forfeited because the Department of Labor hasn't invoked Chevron deference when the Chevron deference would stem from a completely different administrative body, OSHRS, HRC? With regard to that, obviously, it's a different situation. And there may well be a reason for a different rule when we're dealing with administrative adjudication. But here, that's not what we're dealing with. And even if we use the BIA example, the Attorney General has discretionary review over the BIA. So if, for example, the BIA issued a decision invoking Chevron deference, the Attorney General took discretionary review and then said, no, we're not going to invoke deference, it's certainly our position that this court should accept that concession, should accept that view. And if we look at the Supreme Court's latest statement on this in the County of Maui case, I mean, that was a case where the Supreme Court said they recognized the Solicitor General and the agency had not requested Chevron deference. And the court recognized there was no reason, therefore, to apply it. And I think that's very telling about the way Chevron should operate. Thank you. Judge Phillips? Thank you. Counsel is you. I'm just going to address a couple of loose ends until I run out of time. And maybe that'll be one loose end. Judge Phillips, I'll raise my hand when your three minutes are up. I think that might be a helpful signal for all of you. Thank you very much. You've spoken to the congressional delegation issue, and as you know as well as anyone, to Attorneys General and an acting Attorney General having DOJ look at this and said, go forth. You, on the other hand, and without telling me what ATF said, I already know that, I've looked at these statutes involving the or providing the congressional delegation. What is it that they're lacking in your mind that would be sufficient to empower ATF to enact this rule? What language do they not have? What's missing in these statutes is a delegation, a specific and explicit delegation of rulemaking for us to change definitions or definitional rulemaking. What we see in the statute is it says both provisions. They say the agency or the Attorney General has power to issue necessary regulations for enforcement. And that's the distinction. It says enforcement. It's not about legislative classifications. It's not about scope of the statute. It's enforcement only. And I think that's the recognition that the ATF has made now is they said that enforcement is not the same as changing the definition of a machine gun, which dramatically alters the scope of the criminal law. Section 922.0 changes entirely based on the definition of a machine gun. So for the other cases in which the delegation has been found to be legitimate, I would expect to read those and see that language and those statutes delegating the authority. Well, we would expect that. And what the Supreme Court has said. Can you assure me that, in fact, that's the case? I cannot. And what I can say is that the Supreme Court has been clear that administrative delegations or delegations to agencies to issue substantive rules, they have to be clear. It has to be deliberate that the nature of the delegation fits with the nature of the rule. All right. Well, my time is running fast. The Chief hasn't waved his hand yet, so I'm going to hurry and get another one in. And it's a shorter one, but when you said that ATF didn't reexamine the bump stop, are you talking about physically looking at the mechanism of it and so forth? And didn't the ATF already have that knowledge to begin with? They did. And the way it issued the prior classification rulings is an individual firearms examiner examined the device, fired the device, and then made a classification ruling. There was no new examination. There was no new investigation conducted by the examiners prior to this rule. Okay. Thank you. I think that my time is up. All right. Judge Moritz? Unmute. Counsel, you indicated earlier in your argument that it was somehow, if we were to apply Chevron deference here, that we would be imposing this deference against the agency's will. And I guess I'm failing to understand that in light of at least the agency's argument in their supplemental briefing here. What they're saying, they've always said, yes, it's up to you, 10th Circuit, to make a determination about whether this was legislative rulemaking or interpretive rulemaking. And once you do that, you know, if you decide it's legislative, then you do apply Chevron. They've never wavered from that. They've essentially said, it's up to you. And they've reasserted that in their supplemental briefing, that it's up to us to make that determination. So I'm struggling to find out how this would be against the agency's will when they agree it's up to us to make that initial determination based on the, as I see it, based on the administrative record. You see what I'm saying? How is it against, how would it go against what the government seems to be telling us to do? Well, the ACF has said repeatedly through this litigation that they are not asking for Chevron deference. But why? Why aren't they asking for Chevron deference? Because they argue now that it was interpretive, an interpretive rule. An interpretive rule. It was inconsistent with what they said below, right? But interpretive rules are not afforded any Chevron deference. They're not afforded Chevron. Right, right. I understand that. But I'm saying they agree that it's our decision, not theirs, to make that determination, that the label that they put on it doesn't control. Do you agree with that? I do not agree. That the label that government puts on it doesn't control? Because we've held that. Well, I do not agree with that, Your Honor. And the reason I say that is Chevron and the premise with Chevron was that it was a delegation of the agency. And it is up to the agency to invoke it. And I know the government's argument in their most recent brief is that as soon as we issue a legislative rule, that's the same as invoking it. And that's not the case. As we cited in our brief, there are numerous instances where there is a legislative rule that's issued. And that doesn't necessarily mean Chevron deference applies. The court doesn't automatically give deference. There still has to be a delegation, or there still has to be an exercise of that delegation by the agency. All right, well, so in your brief, you indicate that it's up to the agency to decide. If they change their mind, and despite the administrative record and what they said below, if they change their mind in the litigation, why, then, we're going to have to follow that. We're going to have to say, yes, this is an interpretive rule regardless of what we might think. No. Well, what you say in your brief is it's entirely up to the agency what position they want to take in litigation. And you even suggest that in the next case, in a different circuit or in a different district court, the agency could once again take a different position. They could say, in that case, why, now, we're going to say it is a legislative rulemaking process that we underwent. No, Your Honor, and let me make a distinction. How is the agency accountable? Isn't that what Chevron's all about, is letting the agency be accountable to the people? Well, let me make a distinction. Our position is all about respecting the agency's statement. It's only with respect to Chevron deference. Their classification of the nature of the rule is not afforded any sort of deference. What we're saying is that Chevron deference is a rule that binds courts in certain instances only when it's invoked by the agency. But if the agency refuses to do so or declines to do so, there is no basis to bind this court's hands, and instead what this court has to do is just decide what the statute means. All right. Thank you, counsel. Judge Ayer. Good afternoon, counsel. I wanted to follow up on a statement that you made previously about ambiguity. I assume you're arguing here that this statute is not ambiguous or that we have no ambiguity here. That's correct, and as I said at the beginning of my argument, that in some ways is the easiest way to resolve this case or the simplest way because there is no statutory ambiguity, and without an ambiguity, there's nothing for the agency to do. There's no gap to fill, and that should decide the case. There's no gap to fill. There's no reason for the rule to exist. Okay. So if there's no ambiguity, the case is at an end. Yes. Okay. Then your statement about or your discussion of the rule of lenity, that is, I guess, you're assuming if we find ambiguity? Yes, Your Honor, and it would only come up if this court proceeded to that step. If this court nevertheless found ambiguity, then you have the conflict. You have the conflict with Chevron deference and the rule of lenity, and in that conflict, the rule of lenity has to take precedence. Okay, and then just to follow up, we can at a later time talk about, I suppose, if I can have a follow-up, kind of what amount of ambiguity you have to have to invoke the rule of lenity, but what amount of ambiguity do you have to have in your view? Well, Your Honor — I mean, is it grievous or really bad or, you know, where do you fall on that line? Well, there's no reason to sort of split hairs on ambiguity, and what we do know about deference, ambiguity that is a prerequisite for deference, if we look at the Kaiser case, Justice Kagan was very clear. Before you invoke deference, you have to have a clear, a serious ambiguity. She said, we really need it. You have to use all the tools in the toolbox. That is not distinct or any different than saying we need a grievous ambiguity. The point is that if we look at the statute, we don't know whether it covers the conduct at issue. We don't know whether a bump stock is a machine gun. And at that point, we can either apply deference or we can apply lenity, and lenity has to take precedence because of its constitutional roots. Okay, so we get to the rule of lenity, then, is the case at an end? Yes, Your Honor. Okay, well, if we go — oh, okay, I'm done. Judge Carson. Thanks, Chief. The great thing about being last is most of the questions have been asked, but I have a couple for you. So, if you're holding this firearm that's equipped with a bump stock and all you do is pull the trigger, how many times does it fire? Once. And then earlier, we were talking about the nature of the rule change here, and you were telling us that the ATF experts did not go back and reexamine the bump stock itself to see if it justified a rule change. Am I correct that what happened here is the government went back and, based on legal authorities and interpretation, changed the rules? That's absolutely right. And would it be your position in the case, then, that by changing the rule that way, they were basically exercising our type of expertise and not a level of expertise that's unique to the agency? That's correct. This court has certainly more expertise in deciding issues of law than the agency. Okay, that's all I have, Chief. Thanks. All right, that concludes our first round of questioning, and obviously, predictably, it took 30 minutes. Let's now turn it over to the government. Mr. Henselwood, we'll go through the same procedure with you. I'll remember to unmute myself. Good afternoon, Your Honors, and may it please the Court. Brad Henselwood, United States. This Court has asked several questions about Chevron deference. It was obviously a focus colloquially with my colleague, and I'm sure we'll discuss those questions going forward. But before we do, I'd like to explain briefly why those questions are essentially academic in this case. The fundamental interpretive question here is whether Congress, in banning machine guns because of the unique dangers they pose to the public and to law enforcement, drew a distinction between a weapon that allows a shooter to pull the trigger once and produce repeated fire by continuing to apply pressure to the trigger, and a weapon, like a rifle equipped with a bump stop, that allows you to pull the trigger once, apply pressure on a slightly different part of the weapon, and produce exactly the same result, continuous fire until the shooter runs out of ammunition. Nothing in the statutory text or the legislative history supports that sort of distinction, and Congress's ban on machine guns would be largely meaningless if it could be so easily circumvented. Under a Potian's reading of the statute, the Akins Accelerator would not qualify as a machine gun. A machine that pulled and released the trigger on the shooter's behalf, like the device at issue in the Fifth Circuit's decision in camp, would not qualify as a machine gun. The other devices described in our brief, like the autoglove or trigger reset devices, would not qualify. Not even a weapon that required a shooter to pull a trigger and push a button at the same time to produce continuous fire. Potian doesn't address any of these cases or examples in his briefing, but that's because these are machine guns for precisely the same reason a bump stop is. They enable a shooter to take one step, initiate the firing sequence, and produce multiple shots. And that is the precise type of weapon Congress targeted in the statute. So at bottom, the questions about deference this court has posed matter only if it believes that Congress's ban on machine guns can be evaded in the fashion that Potian proposes. As the Supreme Court has made clear, there's no need to consider questions about deference where an agency has adopted the interpretation the court would adopt when considering the question from scratch. And as the district court correctly recognized, that's the case here. And I welcome the court's questions. Thank you, counsel. Just following up on your opening statement, do you still take the position that this was an interpretive rule that was clarifying congressional intent rather than a substantive rule change? That is our position, your honor, yes, and it has been throughout this litigation. And what changed between the previous interpretation that the statute did not cover bump stops to this interpretation that it does cover bump stops? I don't see that there was really any factual change or agency expertise that needed to be invoked that was not invoked previously. It looks to me like it was purely a policy decision after the Las Vegas massacre. Well, your honor, the rule explains in detail that in ATF's prior classification letters addressing bump stops, it had applied a definition of the term automatically that either had no analysis at all, or when it had analysis, looked for the presence of mechanical parts or springs and thought that if you didn't have mechanical parts or springs, it didn't function automatically. And so, for example, the Akins Accelerator, which had a spring, people were initially told if you remove the spring, it will no longer function automatically. But when it went back and looked at the statutory text and the definition of the term automatically, ATF realized that is simply wrong. And in fact, no one here, including Mr. Apposian, thinks that the agency's prior interpretation of that term was correct. No one endorses that. So you're correct that what changed is that the agency adopted the correct understanding of the term automatically. And that is what, of course, channels the expertise the agency exercises. I mean, when you have these experts who perform these reviews of devices and weapons, they're applying what they're told is the set of parameters that Congress instructed them to apply. And when that changes, of course, then you need to go back and reconsider, which is exactly what the agency did with Akins, and it's what it did here. Now, turning to the waiver argument, certainly a number of our cases and Supreme Court cases suggest that the agency controls its litigation. It presents its arguments to the courts, and we usually honor that party presentation rule. Is there something about the cases that you think decisively cuts against the ability of the Department of Justice to waive Chevron deference here? And if not, isn't the litigation position merely a continuation of the agency's policy preferences through the channel of litigation rather than through the lens of applying Chevron deference? All right. I think at bottom, those types of questions go to what the agency did and whether what it did is the type of judgment, the type of exercise of authority that this court generally defers to in the Chevron context. And so those types of judgments as an instruction about how Congress believed certain statutory interpretations ought to be treated, certain decisions ought to be treated, generally is not something that's waivable. And the cases that I think you're referring to do not, as far as I can tell, squarely address this question. And if to the extent they address it at all, it's in context where the answer really doesn't matter. So in this court's decision, Hayes Medical explicitly says it doesn't matter whether we apply Chevron or not, the result is the same. Or the Supreme Court in the Maui decision, first of all, says nobody asked us to invoke it. We, of course, give respect to the expertise and judgments of agencies, but the reading here is the reading advanced in this interpretive rule is not, in fact, reasonable or persuasive. So these are circumstances that really don't get to the question. And I think it's also worth recognizing, I think twice now it's suggested that what the agency was doing here was sort of policy judgment. The rule is explicit that this isn't a discretionary policy decision. Look at page 66-529 of the rule. It says this is not a discretionary policy decision. It is, instead, based only on the functioning of the device and the application of the relevant statutory definition. So that goes to why we said it's an interpretive rule. It also goes to why I think the fundamental question here is to look at the way this statute applies to these devices and recognize that they're public. Thank you. Counsel, I am still caught up on whether or not this is a legislative rule or an interpretive rule, and it sort of gets down to looks like a duck, walks like a duck, it's a duck. Isn't this rule published in the CFR, and isn't that what usually happens with a legislative rule? And also, doesn't it affect individual rights and have the force of law, and isn't that a legislative rule? I'll take those two sequentially if I can. As to the CFR, yes, it is published in the Code of Federal Regulations insofar as it amends the definitional sections that apply at the front of various ATF regulations. Now, not every jot and tittle of the CFR has legal effect. This is a general definitional section, and this material is put in to make clear to anybody. Wouldn't this rule change who would be prosecuted for possession of a machine gun? No, Your Honor. It would not change that? No. If someone is prosecuted, they'll be prosecuted because they violated the statute. Right. But this rule defines the statute, does it not? It tells you it's covered by the statute. Your Honor, to the extent there is any doubt from the public, it should be removed by the fact that ATF has put this in the definitional section of the rule. But even without this, you would still be in violation of the statute. The statute would still cover these devices. You wouldn't need to do this in order for them to be covered. To Judge Matheson's question about Chenery, don't we look at the agency's record here to determine whether or not this rule was passed as a legislative rule? That is, there was even reference to Chevron when the rule was promulgated. Certainly, you look at the explanation that's given in the rule. Again, you don't need to apply Chevron deference in order to uphold this rule. And the reference to Chevron there, Your Honor, I'd point out, it follows the agency saying, look, we've given you the best interpretation of the statute, which it says many times throughout the rule. And then it says, but of course, you know, we've gone through the procedures you would need if for some reason there was any doubt or any ambiguity. And we've given you certainly a reasonable interpretation of the rule. It's sort of an alternative presentation rather than an assertion that that's what's necessary to uphold it. Is the statute ambiguous? Your Honor, I don't think that there's, I think the best reading of the statute covers these devices and that there's really shouldn't be. If it's not ambiguous, why pass the rule? Well, Your Honor, HEF explained that it undertook this rulemaking, this is on page 523 of the rule, to notify the public about its revocation of its past classification letters that were erroneous. Which it explained were erroneous, which is because they were wrong at the time they were issued. And to make people who had taken possession of these devices aware of that change. And that's a virtue of the process that was employed here, given the high profile and the number of people who had these devices. But it doesn't fundamentally change the fact that, you know, these folks, that these devices are covered by the statute and that, you know, that's what people would be prosecuted under, not the rules. Thank you. I'm out of time. Thank you. Counsel, is there any reason the district court below should not decide the issues that have been presented for argument today prior to our considering whether it is so in an erroneous manner or not? Your Honor, I think the district court here already undertook the legal analysis on these particular questions. And I take your questions earlier about the fact that this is in a preliminary posture, but the district court's analysis of the statutory terms here, in our view, exactly correct. And the end result is, you know, essentially a legal determination. The fact that this court would make a ruling on a largely legal question, there might be questions about how that applies as law of the case down the road. But I don't think there's any impediment to this court deciding those questions, you know, here. So has the court already issued a final judgment, then? No, Your Honor. It issued just its opinion on the preliminary injunction, where it holds that the rule provides the best interpretation of the statutory text and that, therefore, a potion has no likelihood of success. And finally, do you think that we should change our practice? Is it your argument that we should change our practice now and in appeals of denial of preliminary judgments, preliminary injunctions, rather, that we should then proceed to the merits and issue a formal opinion? Well, Your Honor, whether or not your opinion would be— My question is, do you think we should change our practice now and just skip merits determinations by the district courts, skip final judgments, and just entertain appeals of the denial of preliminary injunctions and go right to the merits? Well, Your Honor, there's no question this court has jurisdiction over this appeal and that, you know, in the course of deciding whether or not a preliminary injunction is appropriate, you necessarily make at least a preliminary determination about the merits. And so we don't need to— I think we can well make our jurisdictional decisions ourselves. My question is, should we change our practice in the appeal of preliminary—of the denial of preliminary injunctions and skip right to the merits and issue formal opinions? Your Honor, frankly, I'm not familiar with the specific practice of this court that you're referring to, and I would leave it to this court en banc to make decisions about how it wants to proceed in these cases. But certainly— Thank you, counsel. No further questions. Thank you. Judge Hertz? I have two unrelated questions. One, with respect to the decision to change the rule and include bump stocks, what was the basis of that decision? As I understand it, the agency specifically explicitly said, we're not making this change as a policy matter. Did I understand you correctly? Correct. And all its expertise in firearms had already been applied. They knew how these bump stocks work. There was no new expertise information. It was a matter of understanding the language of the statute. Am I correct? And how that fits with these devices, yes. Well, once they made clear their understanding of single function of the trigger and automatic, there was no real expertise in applying that to the bump stock, was there? Well, Your Honor, I mean, I think to the extent that agency is tasked with reviewing these devices and assessing whether they function automatically or by a single function of the trigger, it certainly is applying its technical expertise when it makes classification decisions. Now, as you point out here, the agency collected all the information it needed to have about how these devices function, and really there's no dispute about how practically they function here. Everybody agrees about the basics of that. But once it adopted the correct interpretation of statutory text, then it was clear that these devices were covered by the statute. I think in your introductory remarks, you spoke about how this is the equivalent of a machine gun, as you can shoot so many bullets until it runs out with just one pull. But the – am I incorrect that the agency has said it does not make decisions based on how quickly the firearm can shoot bullets? Part of the statutory definition, no. It's about whether – even if you – even if that cycle happened very slowly, it would still be a machine gun. As a practical matter, it happens very quickly. And conversely, if you have a semi-automatic weapon that is designed so that you can, quote, pull the trigger incredibly fast and shoot as many bullets as a semi-automatic with a bump stock, that would not convert it into a machine gun. Am I correct? Correct. Correct. And that goes to the fact that these devices enable that cycle to happen automatically without the need for the shooter to pull and release the trigger repeatedly. And that's what makes these machine guns where regular semi-automatic rifles are not. So even if you could design a semi-automatic weapon to shoot as rapidly as a semi-automatic now can with a bump stock, that would not convert it into a machine gun. It's not just that in practical terms you can kill as many people as quickly with that device as with a machine gun. Am I correct about that? Right. I mean, I think it's clear from the history of the National Firearms Act and regulation of machine guns generally that Congress was concerned with these weapons because they're uniquely dangerous, because of their uniquely high rate of fire. And that's part of why machine guns have been targeted. But you're correct that merely being able to fire quickly is not sufficient. What matters here is that like the weapon in Cannes or the Athens Accelerator or something similar, you can pull the trigger once and then cause that cycle to continue. As it went out, it happens to happen very quickly, which is one of the reasons they're so dangerous. But the speed is not itself part of the test. Thank you. Judge Matheson? I think I'm up, Chief. Oh, I'm sorry, Judge Holmes. You are correct. Read my notes. Is it in fact correct, though, that it is just the pull of the trigger? I mean, I'm just puzzled why there's the need for forward movement with the non-trigger hand. If you don't have that, it only shoots one bullet, right? Correct. How do you deal with the fact that it is not then the single pull of the trigger that results in this multiple volley of bullets? It's only the single pull of the trigger plus. Because, Your Honor, every court that has looked at the definition of what a trigger is and what that phrase means, single function of the trigger, has said that it looks to the action the shooter takes to initiate the firing sequence. Because, remember, there's a whole range of possible trigger devices and ways you can start a firing sequence. And in this instance, all you have to do is pull the trigger one time, and then that will initiate the cycle. The question of whether it functions automatically, you know, we can get to in a moment. That is what I'm getting at right now. Automatically, the notion that the bullets come out automatically would ordinarily turn on the fact that the trigger has been pulled, right? And that initiates the cycle, and they go automatically after that. Well, Your Honor, if you, for example, were to look at the device in CHAMP, you would have a situation there. The criminal defendant had a fishing reel inside the trigger guard that spun with a motor and pulled and released that trigger repeatedly. And there, I don't think there's any real dispute that that's a machine gun because the shooter is taking one action. They're starting that motor to start that firing cycle, even though the trigger continues to operate in the same way. And that fishing reel would be part of the mechanism of the gun. It would not have anything to do with a hand that is on the gun, which is here, right? Imagine, for example, a device where you had a button at the front of the gun that you pushed down to enable automatic fire and then you pulled the trigger. That would be automatic, I think, in any ordinary understanding of that term. But if you think that it's solely the action of the mechanical action of the trigger that matters, then that wouldn't qualify as a machine gun. I don't think anybody, I think Congress certainly drew a line of that type. The fact that there's some other input is not excluded by the term automatically. I think the panel opinion does a very good job of laying out why that's just not correct as a matter of usual understanding of that term. It's just that it enables a self-acting or self-regulating mechanism, something that functions under the conditions set forth. And if you set the conditions, namely applying a little bit of forward pressure and pulling the trigger one time, you're going to have a continuous firing cycle. That's exactly how it functions. And that's no different from maintaining pressure on the trigger in a weapon that everybody agrees is a machine gun. Let me ask you quickly on the irreparable harm issue. Irreparable harm is, do you set the premise that in the preliminary injunction context, that's an evidentiary burden? Certainly the plaintiff has the obligation to show, yes, irreparable harm in that context. Well, then if it is such, then why isn't this concession what you've done, a concession of that evidentiary burden? Your Honor, the only point we've tried to make here is that a preliminary injunction is supposed to be an extraordinary remedy that's directed to the court's equitable powers. And to the extent that a party comes in and asserts only one injury, and that injury is one that I think that so far everybody who's looked at it has said is not legally cognizable, that a court can, in those circumstances, make its own judgment about whether or not that extraordinary remedy is indeed appropriate. We think even if you agree that he has this irreparable injury, we haven't disputed that he doesn't get to have his bump stock for this period of time. All that means is that it plays into the balance of the equities, and we would win under that balance, given the government's strong interest and Congress's interest in regulating machine guns. So, you know, we just think that's a question directed to the court. And I take what the panel did here is to say, you know, this plaintiff didn't really show or explain any reason why he cared about not having his bump stock. He didn't assert that as a harm, and we're not going to reach out and issue an injunction on that. Judge Batson? Thank you. Counsel, did the ATF regard the statute as ambiguous when it promulgated the rule? I don't believe so, Your Honor, because even if the statutory terms are ambiguous and sort of goes on to say other things, but it says we've given you the best reading of the statute. You know, we're correcting our prior interpretations, and these devices are covered by the statute. This is not a policy judgment. It's a decision about what the statutory text requires us to do with respect to these devices. So you don't even think the agency vacillated on the question of ambiguity? No, I don't. I mean, I think there's that sort of fallback discussion of Chevron that we discussed, which also, you know, sort of generally refers to the fact that the agency had undertaken some of the procedural requisites that would be necessary, you know, for a legislative rule. But, you know, again, I don't think that that assessment can alter or does alter the fact that these devices are covered by the statute, which is why the agency kept saying its prior classifications were errors, which is why, in other contexts, when the agency classifies devices the way it has proceeded is not. Well, I'm just having a hard time squaring the fact that you have these 10 letters going one way in the past, and then we get the rule, and then you come in and say no ambiguity. How can that be? Because, Your Honor, if you look, the rule explains this in great detail, that those letters don't apply the correct understanding of the statutory text. They apply a definition of the term automatically that is wrong. So the ATF for years and years was just unambiguously wrong? ATF was applying the wrong definition of the term automatically with respect to these devices. Yes, that's what the rule says. That's why it was errors. I understand your position. Question about waiver of Chevron deference. Given that the same agency that promulgated the rule is now defending it in this case, does that mean, is that why the government can waive Chevron deference? Your Honor, our position is we can't and we haven't, and that it doesn't make any difference whether it's our agency or some other agency. I mean, no, that's not our view. Thank you. Thank you, counsel. Judge Backrock? Thank you, Chief. In order, and I realize you argue that the statute is unambiguous. If we conclude that the statute can reasonably be susceptible to either interpretation and have to decide whether Chevron deference applies, on page 41 of your response brief, as I read it, you acknowledge that Congress did not delegate to the Attorney General the scope of determining the scope of the criminal prohibition on machine gun possession. So if you have conceded that there is no gap-filling authority that has been delegated to ATF from Congress, how could we apply Chevron deference in the event that we determine the statute itself is ambiguous? Your Honor, so what we were saying there is that, you know, we don't think that Congress has delegated to ATF the authority to criminalize conduct that was not otherwise criminal under the statute. Now, I think my colleague agrees that the question of what delegations have occurred is a question for this court. It's a question of statutory interpretation and of congressional intent. And I take what the panel did here, for example, to be to say, well, no, we've read these delegations, which you invoked in the rule, and we have read the rule itself, and we think, in fact, you did have these delegations and that you did exercise and that you did something in this rule that would entitle you to death. So, you know, it'd be a little bit odd to sort of say, well, you can't, you know, we're not bound by how you describe what this rule is, let's say, or interpret it, and then turn around and say, but we are bound in the same way, in a different way by how you describe the scope of the delegations Congress gave you. But regardless, even at the point where you think there's some degree of ambiguity, you still wouldn't need Chevron deference to uphold this rule or even to apply Chevron deference. Has Congress delegated to ATF discretion to flesh out what kinds of new technological devices with regard to installation on a gun could make it into a machine gun? I mean, absolutely. I mean, that's essentially what ATF does when it issues classification letters, right? And say, is this a machine gun or not? And ATF provides its position with respect to those devices. And certainly ATF has the authority to issue interpretive rules at the time that we believe it issued here. So, yes, I mean, it obviously has authority to put the public on notice of its interpretation of the firearms laws and how they apply to particular devices. Thank you. I'll save you the rest of my time, if I have any. Judge Gold? On the same point in this delegation, which puzzles me, looking at 18 United States Code 926 and Title 26, Section 7801, what is missing? You say that Congress has not authorized gap filling by ATF. What language would you demand to see there before you thought otherwise? I want to be clear. The agency has not generally in the past exercised any authority to make conduct criminal that was not otherwise criminal. And that's not to say that the agency can't issue interpretive rules or interpretive notices to tell people how it understands the statute or provide clarity to the public about how the statute functions. But that's a different type of judgment from what I'm talking about. So, you know, and that's why in the past, for example, with the Athens Accelerator or with any other device ATF classifies, it doesn't proceed by sort of saying, well, are we going to declare this a machine gun or not in some, even in some abstract way? We're going to apply the statutory text and decide whether it is. And that's what it said it was doing here. And if you look at page 534 of the rule, it has that exact sort of discussion. All right. One quick follow up, because the way you just answered that is different. But I understood you to answer Judge Briscoe, which is the extent of the criminal liability. If the final rule is enforced, has criminal liability expanded? In other words, if I have one of these in my back pocket, am I subject to going to prison? You are, but not because of the rule, right? I mean, it's because the statute prohibits possession. In the same way, Your Honor, if you look at the April and Abramski, the cases where the Supreme Court has said we don't defer to the agency's interpretation of criminal statutes, both of those cases involve situations where the government's prior interpretation was too narrow. Like situations where it had given guidance of some kind that said certain conduct was not criminal when it in fact was. And there's no sort of adverse possession of the criminal law. Either it's covered or it's not. Thank you. Nothing further to you. Thank you, Judge Ivey. I think I'm next. I'm sorry, Judge Moritz. That's all right. I just kind of wanted to follow up on Judge Phillips, where Judge Phillips is going, and I guess I'm a little confused, too, about that. Well, I don't have enough time to go back there, so I'm going to go to irreparable harm. You discussed it shortly. It seems to me, as I'm recalling in the original opinion, that the constitutional harm wasn't asserted until the appeal. Is that right? Well, Your Honor, there's a footnote in the district court opinion that talks about this dispute about irreparable harm and says the quotient asserts this sort of generalized constitutional harm. And the district court says the government's right. Basically, that sort of thing doesn't exist, but the government does say that the loss of his bump stock maybe would qualify as such. But the actual nature of the constitutional harm that he apparently asserted, or the district court referred to, as I recall, wasn't asserted until his appellate briefing. And that's when he asserted the separation of powers as the violation that he was asserting, although he didn't actually brief that either there. I would have to go back to the district court briefing to see whether that was raised in his preliminary injunction filing, but certainly we've never suggested that that harm, whatever it is, is one that's legally cognizable, and I think everybody so far has recognized that it is not. Thank you. Now we're to Judge Hyde. Great, thank you. I just want to ask, I know it's been asked several occasions, but I just want to ask you, you believe that the language is not ambiguous and that the case stops there? We don't go forward with anything with regard to Chevron? You can start with that, and we think it'd be entirely correct to hold that these devices are plainly covered by the statute. If you thought there was some two available sort of reasonable readings, then the question would be what the best or the correct understanding of the statute is. And we think certainly if you're conducting that sort of analysis, independent of Chevron, the answer is also that these devices are covered. For all the reasons that I laid out in the intro, these devices, like any other that enable a shooter to create and maintain this kind of firing sequence, are covered by the statute. And it would be, there's a reason why courts have consistently rejected efforts to circumvent the statute by these sorts of novel devices, because otherwise Congress's machine gun ban wouldn't do a whole lot of good. Okay, well, I guess I just want an answer yes or no. Do you believe the statute is unambiguous? We believe it's unambiguous in our favor. And if you have doubts about that question, you can explain why. Okay, and I appreciate that. So could I possibly then ask you how you read the statute unambiguously? And just, we say the language is single action of the trigger. And I just want you to fill in the blank. Single action of the trigger, that phrase means what? The term is single function of the trigger. Okay, I'm sorry. Yeah, single function of the, what does that phrase mean? A single pull of the trigger and analogous motion. That's what the rule explains that phrase. Just say that one more time. I'm sorry. A single pull of the trigger and analogous motion. So if you were flipping a switch, pushing a button, you know, pushing a paddle, whatever it is, that would qualify. Okay, so help me understand, and I know Judge Holmes asked you this too, but single function of the trigger, it's, how do you get the analogous motions in there? I just, where does that come from? Well, that's where the term function comes in, right? Pulling statute because the question, there's any number of ways you can initiate a firing sequence. Remember, Your Honor, I think we all, when we say trigger, we have this idea about sort of a curved metal trigger in our heads. That is not in fact how many weapons, including many machine guns, fire now or at the time of the National Firearms Act. And in fact, there are weapons that have no sort of trigger in the sort of ordinary sense that we often think of it. If you think about the weapon in Carter in the Sixth Circuit, there was no trigger there at all in the sort of ordinary sense of the way we often think about it. So instead, courts have recognized that trigger means whatever the shooter does to initiate the firing sequence. The Ninth Circuit held in Evans, Fifth Circuit, that's how courts have consistently understood the skill the Seventh Circuit has raised to set in motion the firing of more than one shot. Okay, thank you. Our last question goes to Judge Carson. Thank you, Chief. So I just want to clear one thing up about the irreparable harm. The district court's order, I'm going to read you a part of it. You tell me if this is your recollection of what happened. Defendants acknowledge that the irreparable harm prong of the preliminary injunction test is met here. Is that right? So we said he does not have, that insofar as he will not have his bump stock anymore, he suffers some harm as a result? You didn't tell the court below, element number four, judge, not met, they lose. You said, we agree, element number four met, no need to talk about it. Well, when the government's a party, of course, the third and fourth elements generally merge. So it's a general assessment of the balancing of the equities. And so in that circumstance, we said, look, the balance of the equities clearly favors the government here. He's proposed a harm that isn't a harm that this court can consider in the balance. Here's the harm you could consider, and the government prevails if you consider that harm. Okay, it just seems like we're being a little bit evasive. I don't want the whole explanation of how the elements merge. I mean, the district court said, you tell me she's right or she's wrong. She either got it right or she got it wrong. She said that you acknowledge the irreparable harm prong is met. We're not disputing that he has irreparable harm in the sense that we've described. Of the type that we've described. How about this, just to nail it down tight. Did the district court say it wrong? No. Okay, that's good enough. And then my next question is this. I want you to assume for me, you've taken the position that the statute's not ambiguous. Let's assume that there's something in the language that you think's marginally ambiguous or unclear. And you're able to apply, in this case a great one would be, say, the ordinary meaning rule. Say, judge, if you just take the ordinary meaning of the term automatically, we're a dead winner in this case. So if you do that, and that cures any type of ambiguity, does Chevron apply? Your Honor, if the question is, when you apply the plain meaning of the statute, and you conclude the government has the correct reading of the statute, which we do, does Chevron apply? Well, at that point, there's no need to apply Chevron because we've given you the correct reading. You're not deferring to anything the agency is saying or doing. You should be recognizing that the agency's given the right reading of the statute. I guess some of the discussion in this case has been around when Chevron can apply. And can it apply before you employ all these different canons of statutory construction? And so I guess my question is, if you can employ a canon of statutory construction to clear up any ambiguity or perceived lack of clarity in a statute, does Chevron apply once you've done that? Your Honor, I mean, sort of just to step away from this rule for a second and talk about how Chevron applies. I'm just talking about in general, generally applicable. Right, so generally at sort of Chevron, you know, step one, you should try to assess whether Congress has spoken directly to the question at issue. And in doing so, generally apply the various canons of statutory construction, et cetera, to figure that out. And then you're often left with an ambiguity. Congress hasn't directly spoken to the question. And then the question becomes whether what the agency did was reasonable. I'm out of time. Thanks, Chief. Thank you, counsel. Your time has expired. Paul, if you could give Mr. Guckenberg five minutes for rebuttal. And before you get started, if anybody on the court has any questions during the rebuttal time, why don't you just raise your hand and I'll call on you. Mr. Guckenberg. Thank you, Your Honor. As the government has acknowledged, this case raises a number of difficult questions about deference. But it's our position, just like the government, that this court really doesn't have to go there. We don't have to address those difficult decisions. This is really just a question of what the statute means. And this is just a question of doing what this court is best at and determining what the plain language of the statute means. And there is no way to read the definition of a machine gun to plainly encompass a bump stock. Because the definition of a machine gun talks about the single function of the trigger firing automatically more than one shot. And a bump stock just does not operate that way. As Judge Holmes noted, you have to push forward with your non-shooting hand for every shot. That means it's not automatic. And for every bullet that's fired from a gun using a bump stock, you have to hit the trigger mechanism and it has to reset. That's not a single function. And that's enough to decide the case. Judge Briscoe? Can the bump stock shoot at all without the pull of the trigger by a human being? No, Your Honor. It is a non-mechanical piece of plastic that goes on the end of a firearm. So there's a debate here whether or not the pull of the trigger initiates it or whether there's continuous pull of the trigger. And you're saying there's no continuous pull of the trigger, but there's a lot of other human activity involved. Yes, Your Honor. There are multiple pulls of the trigger. And as Judge Carson noted, if you just pull the trigger and hold it with the bump stock, the gun will fire once. And that's it. It will never fire again. You have to release the trigger, it has to reset, and you have to engage the trigger again. And under the plain language of the statute, that's not a machine gun. And just addressing the ambiguity question. While it seems like this is a difficult question, or it seems like maybe there is an ambiguity, I just remind the Court that difficulty in interpretation is not the same as ambiguity. And that was a point that the Court emphasized in Kaiser. And courts across the country have looked at these terms and they said, we know what they mean. We know what automatically it means. We can look it up in the dictionary. We know what single function of the trigger means. We can work with that. And it doesn't necessarily mean there's an ambiguity that prompts deference or prompts gap-filling. And because of the ATF's position here, and the ATF's position that there is no substantive rulemaking authority, this Court should simply reject any effort by the agency to try to fill an imaginary gap. That's how this case ends. If there's an ambiguity, this case is over. Or if there's no ambiguity, this case is over. Because there is no substantive rule. Can you explain how you meet the balancing of equities and public interest prongs of the injunction? Yes, Your Honor. And remember, an injunction is about avoiding a judicial injury to the parties. And it is about trying to preserve the status quo. And I think it's noteworthy that the government has conceded, they conceded below, that there was an irreparable injury. And we have met that showing. And the only thing they contested was the balance of equities. And it's our position that this is an invalid rule. And if we're weighing the equities, we're weighing the equities of giving Mr. Reposian his single bump stock back, and there's no suggestion he's not a law-abiding citizen, he is. If that's on the one hand, that's one part of the balance, and the other balance is making him be subject to criminal prosecution unlawfully, then the balance of equity is very clear. It goes against the government, and it goes in favor of the injunction. And just to address the irreparable harm point that was brought up. Judge DiCero? Oh, excuse me. I mean, you did, Judge DiCero. Thanks. Am I unmuted? Yes, you are. Has the trial court ruled on an injunction in this case? Yes, Your Honor, on a preliminary injunction. I asked, has it ruled on an injunction in this case? No, Your Honor. Thank you, because you're arguing an injunction hasn't been ruled on yet. Yes, Your Honor, a preliminary injunction is what I meant to say. Judge Lewis? I just wanted to make a comment. I can't think of a more difficult procedure for counsel, for advocates to have to argue before an appellate court, and I would like to thank both counsel for handling this extremely well. It was really important to the function of the court. Thank you. Thanks, Your Honor. All right. Your time has expired, counsel. I echo what Judge Hart said. I think you performed admirably in suboptimal conditions, and we'll learn some lessons about this on how we proceed with other en bancs in the future, but we appreciate your historic arguments this afternoon. You are excused, and the case shall be submitted.